IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:22-CV-97-FL

| | | |
|---|---|---|
| JAMES L. DOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| ARCHER DANIELS MIDLAND COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion to remand pursuant to 28 U.S.C. § 1445(c). (DE 9). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, plaintiff's motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action May 20, 2022, in the Superior Court of New Hanover County, North Carolina, alleging defendant retaliated against plaintiff after he exercised his rights under the North Carolina Workers' Compensation Act, in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95–241 et seq. See James L. Dobson v. Archer Daniels Midland Company, Case No. 22-CVS-01749.

Defendant removed to this court June 24, 2022, on the basis of diversity of citizenship. Plaintiff now timely moves to remand the case pursuant to 28 U.S.C. § 1445(c).

**STATEMENT OF FACTS**

The facts alleged in plaintiff's complaint may be summarized as follows. Plaintiff worked for defendant as a mechanic beginning July 16, 2012, and as a result of his employment tasks was exposed to chemicals daily. (Pl. Compl. (DE 1-3) ¶ 7). In April 2021, plaintiff was diagnosed with work-related kidney disease. (Id. ¶ 8). Plaintiff informed several members of defendant's management team of his diagnosis, and thereafter coworkers began to inquire when plaintiff would retire. (Id. ¶ 9).

Plaintiff sustained injury from heat exposure while at work just four months later, on July 27, 2021, and was sent home early after notifying Greg McDowell, presumably a supervisor. (Id. ¶ 10). Plaintiff missed work from July 28, 2021, through August 3, 2021, due both to his injury as well as defendant's COVID testing requirements then in place. (Id. ¶ 11). Plaintiff was terminated upon his return on August 5, 2021. (Id. ¶ 12). Defendant cited plaintiff's insubordination as the reason for his termination. (Id. ¶ 13).

**COURT'S DISCUSSION**

A.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008).

B.  Analysis

Plaintiff's motion to remand does not challenge the diverse citizenship of the parties or the amount in controversy requirement. Rather, plaintiff's sole basis for challenging this court's

subject matter jurisdiction is 28 U.S.C. § 1445(c), providing "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

Section 1445(c) was enacted by Congress in 1958 to relieve the federal courts from "the removal of workmen's compensation cases from the state courts to the federal courts . . . that were jamming the dockets of busy federal courts." Arthur v. E.I. DuPont de Nemours & Co., Inc., 58 F.3d 121, 124, 128 (4th Cir. 1995). It is governed by federal law, and "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits" are to be removed. Id. at 125; see Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 705 (1972).

Plaintiff here asserts violation by defendant of REDA, which prohibits "discriminating or tak[ing] retaliatory action against an employee" because that employee files or attempts to file a complaint or initiates an inquiry under one of several listed provisions of the North Carolina General Statutes, including the Workers' Compensation Act, N.C. Gen. Stat. § 97 et seq., upon which plaintiff's claim is based. See N.C. Gen. Stat. § 95–241(a)(1)(a.).[1]

Whether REDA "arises under" the North Carolina Workers' Compensation Act has not been decided by the United States Court of Appeals for the Fourth Circuit but has been considered by all three federal districts in this state, with two lines of cases emerging. All are guided by Arthur, where the Fourth Circuit considered whether a "deliberate intention" claim arose under the West Virginia Workers' Compensation Act:

> The West Virginia Workers' Compensation Act gives covered employers a general immunity from employee suits for "damages at common law or by statute" resulting from work-related injuries. W. Va. Code (Code) § 23–2–6. The immunity is lost,

---

[1] N.C. Gen. Stat. § 95–241(a)(1) provides in relevant part "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . . Chapter 97 of the General Statutes[.]"

3

however, if an employer acts with "deliberate intention" to injure an employee. Id. at § 23–4–2(c)(2). If the deliberate intent exception applies, the employee may file an action for damages in excess of workers' compensation benefits. Id. at § 23–4–2(b). Civil actions brought under this exception are known in West Virginia as "Mandolidis suits," named after Mandolidis v. Elkins Industries, Inc., 161 W.Va. 695, 246 S.E.2d 907 (1978), a decision that liberalized the definition of "deliberate intention."

Arthur, 58 F.3d at 123. The Fourth Circuit held that a "deliberate intention" claim did not arise under the West Virginia Workers' Compensation Act, and thus a "deliberate intention" claim was not barred from removal by 28 U.S.C. § 1445(c). Id. at 128.

In reaching its holding, the Fourth Circuit explained that the definition of "workmen's compensation laws" must be based upon the ordinary meaning of the term as used in 1958, the year Congress passed § 1445(c). Id. at 125. On the basis of workmen's compensation laws then existing, the court identified the following features as typical:

> (1) negligence and fault of the employer and employee were immaterial to recovery, (2) common law suits against the employer were barred, (3) medical expenses were covered and cash benefits were capped at a percentage of the employee's wage, (4) an administrative agency ran the system with relaxed rules of procedure to facilitate prompt compensation, and (5) state court review of agency decisions occurred on a deferential basis.

Id.

Applying these same factors to REDA, one court in this district concluded that REDA does not "arise under" the North Carolina Workers' Compensation Act, and 28 U.S.C. § 1445(c) thus did not require remand. See Edwards v. PCS Phosphate Co., Inc., No. 4:10-CV-89-BO, 2010 WL 11619249, at *3 (E.D.N.C. Oct. 8, 2010) ("Because REDA does not bear any of the characteristics of a 'workmen's compensation law' as defined in Arthur . . . Section 1445(c) does not prohibit the Court from resolving Edwards' REDA claim, and his motion for remand is denied.").

Another line of cases, however, has relied upon the reasoning in Arthur, where the court distinguished between a "deliberate intention" claim and a retaliatory discharge claim. Arthur, 58

4

F.3d at 128 (noting "the sharp distinction between a retaliatory discharge claim and the Mandolidis claim" addressed in Arthur (emphasis added)). The Fourth Circuit described an action for retaliatory discharge as "integrally related to the just and smooth operation of the workers' compensation system; it insures [sic] that those seeking compensation benefits are not scared out of making claims." Id. A retaliatory discharge cause of action "therefore aids the overriding purpose of providing fixed, no-fault benefits for workplace injuries." Id. By contrast, "the Mandolidis claim," addressed by the court in Arthur, had "no relationship to providing no-fault benefits and plays no role in promoting the just and smooth operation of the workers' compensation system." Id.

On the basis of this distinction, two district courts in this state have concluded that specific application of the Arthur factors to REDA is not proper. See Wiley v. United Parcel Serv., Inc., 227 F. Supp. 2d 480, 484 (M.D.N.C. 2002); Arnett v. Leviton Mfg., Inc., 174 F. Supp. 2d 410, 414-15 (W.D.N.C. 2001). Rather, these district courts have reasoned that though application of the Arthur factors to REDA might suggest it is not a workmen's compensation law for purposes of § 1445(c), following the reasoning in Arthur, actions for retaliatory discharge are so closely related to the underlying workers' compensation claims that they still must be treated as a part of the workers' compensation system. Arnett, 174 F. Supp. 2d at 415.

These district courts also rely upon case law from other circuits holding that where retaliatory discharge is a statutory claim, rather than one of common law, it arises under the state's workers' compensation law, and falls within the scope of 28 U.S.C. § 1445(c). See Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000) ("Section 25–5–11.1 [pursuant to which retaliatory discharge claims are brought] is an integral part of Alabama's workers' compensation regime."); Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1245-47 (8th Cir. 1995) ("Under the plain meaning

5

of the statute, where a state legislature enacts a provision within its workers' compensation laws and creates a specific right of action, a civil action brought to enforce that right of action is, by definition, a civil action arising under the workers' compensation laws of that state and therefore § 1445(c) applies."); Jones v. Roadway Express, Inc., 931 F.2d 1086, 1092 (5th Cir. 1991). But see Spearman v. Exxon Coal USA, Inc., 16 F.3d 722, 725 (7th Cir. 1994) (holding that plaintiff's tort claim alleging retaliatory discharge did not "arise under" the Illinois workers' compensation laws for purposes of applying § 1445(c)).

Of these cases, Jones is the most analogous to the instant action as, like here, it concerned a retaliatory discharge claim located separately from the state's workers' compensation act in the statutory scheme. Id.; see N.C. Gen. Stat. § 95–241 et seq. (REDA); N.C. Gen. Stat. § 97 et seq. (North Carolina Workers' Compensation Act). In concluding that the Texas retaliatory discharge action nevertheless arose out of the separately chaptered workers' compensation act, the Jones court expressly relied on the notion, repeated in Arthur, that retaliatory discharge actions are closely connected to the workers' compensation scheme. Jones, 931 F.2d at 1092. Indeed, they "enable[] injured workers to exercise their rights under that scheme. The Texas Legislature enacted article 8307c [which provided for actions for retaliatory discharge] to safeguard its workers' compensation scheme." Id.

Also, like REDA, the retaliatory discharge statute and in Jones originally was included in the workers' compensation statute, before being re-codified. Jones, 931 F.2d at 1091. Though REDA now exists as a separate statute, those sections dealing with workers' compensation first were enacted as part of the North Carolina Workers' Compensation Act in Chapter 97 of North Carolina's General Statutes. Wiley, 227 F. Supp. 2d at 487 n.9; see Johnson v. Trustees of Durham Technical Cmty. Coll., 139 N.C. App. 676, 681 (2000) ("REDA replaced North Carolina General

6

Statutes section 97–6.1, the purpose of which was to promote an open environment in which employees could pursue remedies under the Workers' Compensation Act without fear of retaliation from their employers.").

REDA, however, still does not squarely fit within the statutory-based retaliatory discharge claim considered in Jones as, in addition to being chaptered separately, REDA also does not exclusively provide a cause of action for workers' compensation claims. REDA instead deals broad-based relief for a variety of retaliation claims including under the Occupational Safety and Health Act of North Carolina, the Mine Safety and Health Act, the North Carolina Wage and Hour Act, and the North Carolina statutes prohibiting discrimination based on sickle cell or hemoglobin C traits. See N.C. Gen. Stat. § 95–241(a)(1).

The district court in Wiley, however, persuasively addressed this issue, noting "[s]imply because REDA enumerates other prohibited areas of retaliatory discharge besides workers' compensation does not mitigate the fact that REDA's genesis is in the workers' compensation laws of North Carolina." Wiley, 227 F. Supp. 2d at 487. Indeed, REDA still furthers an essential element of the North Carolina Workers' Compensation Act by providing "an open forum for employees to pursue their workers' compensation remedies." Id. It also safeguards the entire scheme by ensuring claims are not suppressed by fear of retaliation. See Jones, 931 F.2d at 1092.

In sum, the weight of authority supports the conclusion that provisions of REDA relating to workers' compensation "arise under" the workers' compensation laws for purposes of 28 U.S.C. § 1445(c).

In arguing the court should instead construe 28 U.S.C. § 1445(c) narrowly, defendant focuses on the separate chaptering of the retaliatory discharge claim within the North Carolina General Statutes. Defendant argues that had the North Carolina legislature intended for REDA to

7

"arise under" the North Carolina Workers' Compensation Act, it would have codified REDA within the same chapter. First, as already noted, the portion of REDA relating to workers' compensation formerly was codified as § 97–6.1 of the General Statutes. Arnett, 174 F. Supp. 2d at 417. Second, the location where a statute is codified is not dispositive of the determination of whether it "arises under" the worker's compensation laws of a state for § 1445(c) purposes. Id. As the Fourth Circuit held in Arthur, the court is "not bound by where the section appears in the . . . [state] Code" as 28 U.S.C. § 1445(c) is governed by federal law. Arthur, 58 F.3d at 127.

Thus, while this case is subject to federal jurisdiction under 28 U.S.C. § 1332, it is barred from removal by 28 U.S.C. § 1445(c). This court lacks subject matter jurisdiction, and the case shall be remanded to state court.

## CONCLUSION

Based on the foregoing, plaintiff's motion to remand is GRANTED. (DE 9). This case is REMANDED to the Superior Court of New Hanover County, North Carolina, for further proceedings. The clerk is DIRECTED to transmit a certified copy of this order to the clerk of the Superior Court of New Hanover County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order.

SO ORDERED, this the 6th day of March, 2023.

*(signature)*
LOUISE W. FLANAGAN
United States District Judge